# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF  New York

---

HEIDRICK & STRUGGLES INTERNATIONAL, INC.,

Plaintiff(s),

-*against*-

KORN/FERRY INTERNATIONAL, CHAD ASTMANN, DEEPALI VYAS, DANIEL KAPLAN, and LORRAINE HACK,

Defendant(s).

---

Index No.

**Summons**

Date Index No. Purchased:

**To the above named Defendant(s)**

KORN/FERRY INTERNATIONAL, 200 Park Avenue, 33rd floor, New York, NY 10166; CHAD ASTMANN, 86 Edgemont Avenue, Larchmont, New York 10538; DEEPALI VYAS, 196 Boulder Ridge Road, Scarsdale, New York 10583; DANIEL KAPLAN, 25 Canterbury Road, Livingston, New Jersey 07039; LORRAINE HACK, 67 Park Avenue, Apartment 10B, New York, NY 10016.

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is  CPLR §503

which is   the residence of certain Defendants; and a substantial part of the events alleged occurred within this County.

Dated:  New York, NY

February 15, 2018

Reed Smith LLP

by  /s/ Steven Cooper

Steven Cooper

**Attorneys for Plaintiff**

HEIDRICK & STRUGGLES
INTERNATIONAL, INC.

Steven Cooper
REED SMITH LLP
599 Lexington Avenue
New York, NY  10022-7650
Telephone: (212) 521 5400
Facsimile: (212) 521 5450
scooper@reedsmith.com

Peter M. Ellis (pro hac application to be filed)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

|  |  |  |
|---|---|---|
| HEIDRICK & STRUGGLES INTERNATIONAL, INC., | : | Index No.:-_____ |
| Plaintiff, | : | |
| v. | : | **COMPLAINT** |
| KORN/FERRY INTERNATIONAL, CHAD ASTMANN, DEEPALI VYAS, DANIEL KAPLAN, and LORRAINE HACK, | : | |
| Defendants. | : | |

---

## COMPLAINT

Plaintiff Heidrick & Struggles International Inc. ("H&S"), for its Complaint against Defendants Korn/Ferry International ("Korn Ferry"), Chad Astmann ("Astmann"), Deepali Vyas ("Vyas"), Daniel Kaplan ("Kaplan") and Lorraine Hack ("Hack," and, together with Astmann, Vyas and Kaplan, the "Former H&S Employees"), by and through its undersigned counsel, Reed Smith, LLP, hereby alleges as follows:

## SUMMARY OF THE ACTION

1.     H&S is a publicly traded company listed on NASDAQ and is one of the world's leading executive search and leadership consulting firms specializing in chief executive, board of directors, and senior level management assignments.  H&S' executive search experts have assisted many of the most successful organizations to build their senior leadership teams and, as a result, H&S is a recognized leader among global executive search firms.

2.     This action stems from the Former H&S Employees' breaches of clear, unambiguous and narrowly tailored non-compete, non-disclosure, non-solicitation and other provisions of their respective employment agreements with H&S.

3.     Korn Ferry, a direct competitor and rival of H&S, has tortiously interfered with

NYSCEF DOC. NO. 1
INDEX NO. 650750/2018
RECEIVED NYSCEF: 02/15/2018

the Former H&S Employees' agreements with H&S and aided and abetted their breaches of those agreements by poaching the Former H&S Employees with the specific purpose of misappropriating H&S' confidential and proprietary information and trade secrets and using that information to gain a competitive advantage over H&S at H&S' expense.

4.     As set forth further below, H&S' confidential information includes, but is not limited to, its proprietary and innovative candidate assessment model, through which H&S employs a differentiated approach to executive searches, as well as information pertaining to H&S clients, including their business plans, leadership teams, succession plans, talent needs personnel practices and cultures.  H&S' confidential information also includes information about H&S engagements and assessments, earnings and finances, operations, methods, and strategy, pricing structure, software, operating systems, applications, and program listings, manuals and documentation, confidential and proprietary databases or databases containing confidential and proprietary information, financial projections, targets and budgets, private information related to the employment, performance and compensation of candidates and fellow employees, inventions and new developments and methods whether or not reduced to practice, and all copyrightable works.  ("H&S Confidential Information" or the "Confidential Information").

5.     The H&S Confidential Information was developed over a long period of time, with great effort and at great expense, to maintain and grow H&S' business and to maintain and sustain a competitive advantage over other search firms that do not have access to or use of such Confidential Information.

6.     This information is not obtainable from public sources and, as a result, H&S goes to great lengths to protect, preserve and safeguard the H&S Confidential Information, including, but not limited to, restricting access to it.

- 2 -

7.      In consideration of their compensation, employees were required to sign non-disclosure agreements, forbidding employees from transferring the H&S Confidential Information to outside, non-secure computer or email systems or third parties, such as Korn Ferry.

8.      As set forth below, the Former H&S Employees each had access to and currently possess the H&S Confidential Information.

9.      Beginning in October 2017, each of the Former H&S Employees resigned from H&S and accepted employment at Korn Ferry in direct contravention of the express terms of their respective employment agreements.

10.     With Korn Ferry's assistance, the Former H&S Employees have violated, and continue to violate, the post-employment restrictions set forth in their employment agreements with H&S, as well as common law and statutory duties owed to H&S by, among other things, soliciting H&S employees, contacting H&S clients, forwarding confidential client and pitch materials from H&S computers to their personal email addresses, refusing to confirm that H&S Confidential Information has been deleted from their personal computing devices, and working for competitor Korn Ferry while in possession of H&S Confidential Information.

11.     Despite being advised by H&S of their obligations under their agreements, including to return and not use H&S Confidential Information and H&S physical and intellectual property, Astmann, Vyas, Kaplan, and Hack—induced, aided, and abetted by Korn Ferry—have failed to comply with those obligations.

12.     H&S brings this action to enforce its contractual, common law and statutory rights and seeks damages for, among others, (i) Astmann's, Vyas, Kaplan's and Hack's breaches of the non-competition and non-solicitation provisions of their respective employment

- 3 -

agreements; (ii) Korn Ferry's tortious interference with the Former H&S Employees' agreements with H&S; (iii) Korn and Ferry's aiding and abetting of the Former H&S Employee's breaches of their duty of loyalty to H&S; and (iii) Defendants' misappropriation of H&S' confidential and proprietary information and trade secrets.

13.    H&S seeks, among other relief, a judgment in an amount to be determined at trial, and injunctive relief.

## THE PARTIES

14.    Plaintiff H&S is a corporation organized under the laws of the State of Delaware with its principal place of business at 233 South Wacker Drive, Suite 4200, Chicago, Illinois.

15.    Defendant Astmann is a former employee of H&S in New York City who now works for Korn Ferry in New York City and resides at 86 Edgemont Avenue, Larchmont, New York 10538.

16.    Defendant Vyas is a former employee of H&S in New York City who now works for Korn Ferry in New York City and resides at 196 Boulder Ridge Road, Scarsdale, New York 10583.

17.    Defendant Kaplan is a former employee of H&S in New York City who now works for Korn Ferry in New York City and resides at 25 Canterbury Road, Livingston, New Jersey 07039.

18.    Defendant Hack is a former employee of H&S in New York City who now works for Korn Ferry in New York City and resides at 67 Park Avenue, Apartment 10B, New York, NY 10016.

19.    Korn Ferry is a publicly-traded corporation organized under the laws of the State of Delaware, with a principal place of business in Los Angeles, California and with offices at

- 4 -

200 Park Avenue, 33rd floor, New York, NY 10166.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over this action under CPLR 301 and/or 302. Defendants transact business in the State of New York and this action arises from Defendants' activities in the State of New York.

21.    Venue is in this County is proper under CPLR 503, and because a substantial part of the events alleged occurred within this County.

## FACTUAL BACKGROUND

**A.    Description of H&S' Business**

22.    H&S is a worldwide executive search firm and leadership advisory firm, specializing in chief executive, board of directors, and senior level management assignments, as well as leadership consulting assignments, such as executive assessment, succession planning and corporate governance.

23.    H&S' consultants work in a structure similar to that of a law firm. The Partners are primarily responsible for obtaining new search engagements. Once a client signs an engagement agreement with H&S to perform an exclusive search, an Associate generally takes primary responsibility for contacting candidates, assessing the candidates and doing background research. Partners typically perform the candidate interviews and finalize the report to the client with the candidate recommendation.

24.    The services provided by H&S to its clients are professional in nature, and involve near-permanent client relationships. The individual engagements at issue often involve fees in excess of $100,000, and involve such matters as assisting in identifying, hiring and retaining Chief Executive Officers, members of the Board of Directors, or other top positions; or consulting on matters pertaining to the highest levels of leadership in the client's organization.

- 5 -

As such, clients typically retain organizations for such services not based on who is the lowest bidder, but rather, those organizations with the personnel and resources to provide first class services in these areas.

25.     H&S invests substantial resources, including monetary resources, in developing and retaining relationships with such clients.  These clients frequently work with the same provider for many years, developing confidence as successful work is performed for them.

26.     H&S also develops confidential, proprietary and trade secret information critical to obtaining, retaining and developing these client relationships.  H&S Confidential Information includes information that is not generally known to the public, which is used in its business including, but not limited to, information pertaining to H&S clients, their business plans, leadership teams, succession plans, talent needs, personnel practices, cultures, services, engagements and assessments, earnings and finances, operations, methods, and strategy, as well as the same information regarding H&S' subsidiaries, affiliates and related companies.  The H&S Confidential Information also includes information about H&S pricing structure, software, operating systems, applications, and program listings, manuals and documentation, confidential and proprietary databases or databases containing confidential and proprietary information, financial projections, strategies, targets and budgets, private information related to the employment, performance and compensation of candidates and fellow employees, inventions and new developments and methods whether or not reduced to practice, and all copyrightable works.

27.     While working on client engagements, H&S consultants use a proprietary internal tracking database, referred to as *Latitude*, which contains a wealth of Confidential Information, such as client and contact information, engagement information, and data about potential business opportunities which H&S gathers from candidates.

- 6 -

28.    H&S also utilitzes *Leadership Signature*, which is a proprietary tool used to assess executive talent.  Using Leadership Signature, H&S works with clients to ensure team alignment and engagement to create the conditions for long term client success.

*29.    Latitude* and *Leadership Signature* were developed internally at H&S based upon H&S' expertise and years of experience in the industry at substantial expense.  These proprietary tools reflect H&S' industry knowledge and insights and differentiate H&S from competitors in the marketplace.

30.    The value of these tools lies in their confidentiality and H&S' competitive advantage would be threatened if the information was known in the marketplace.

31.    H&S, thus, takes significant steps to protect its' Confidential Information, including requiring consultants to execute confidentiality agreements.  Consultants also must have a username and password to log into H&S' internal database and must acknowledge their confidentiality obligations every time they access the H&S database, including from the company network.

32.    Each time consultants access *Latitude*, they are shown a "click through" screen, which reminds them of H&S' expectation that the information contained in the database will remain secure and confidential.  The screen provides, in part:

> [b]y continuing to the next page and accessing and using Latitude, I hereby acknowledge that in connection with my duties and responsibilities at Heidrick & Struggles (the "Company"), I will be given access to and will become familiar with highly sensitive, protected confidential and proprietary information of the Company, its current and potential clients and its business prospects (collectively, "Confidential Information"). . . . By accessing and using Latitude, I hereby acknowledge and agree that I will not, without the Company's consent, disclose any Confidential Information to any third party and shall not use the Confidential Information except pursuant to and in connection with my duties and responsibilities to the Company and in compliance with the Company's Code of Conduct and any other Company policies and procedures.

33.    In addition, when consultants are outside of H&S' computer network, they must

- 7 -

separately enter a user name and password to log into *Latitude*.

**B.    Korn Ferry's Predatory Competitive Conduct**

34.    H&S' principal competitors include organizations that deliver executive search and advisory services on a scale that crosses multiple functions, industries and geographies. Unlike boutique firms that focus on a particular industry or geographic market, these organizations serve a broader range of national and international clients, maintain a presence in markets around the globe and credibly represent themselves as having a comprehensive set of services focused on talent acquisition.

35.    Korn Ferry is one of H&S' direct competitors across the globe, with H&S maintaining 15 offices across the United States, plus 38 additional offices worldwide, while Korn Ferry maintains 19 offices in the United States, with an additional 101 offices worldwide.

36.    Beginning in or around October 2017, Korn Ferry engaged in predatory competitive behavior against H&S. This plan included, among other things, identifying certain key H&S employees, poaching these key employees from their positions at H&S, recruiting them to work at Korn Ferry and, then, intentionally misappropriating H&S' Confidential Information.

37.    Korn Ferry's scheme involved the concentrated recruiting of certain valued H&S talent that was designed to undermine the stability of certain H&S divisions.

38.    Korn Ferry proceeded with a targeted plan to hire key H&S partners in H&S' most profitable practice groups, including H&S' Global Technology & Services Practice, which has placed some of the most recognizable executives to lead powerful global technology organizations.

39.    Since September 2017, Korn Ferry has poached, at a minimum, nine H&S employees from offices in the United States, including, but not limited to, Defendants Astmann,

- 8 -

Vyas, Kaplan and Hack as further set forth below.  In addition, H&S has poached at least five employees from H&S' international locations, including Paris, Singapore, and Australia.[1]

40.     Korn Ferry's predatory business conduct has even attempted to undermine H&S as a going concern. Upon information and belief, Korn Ferry has undertaken efforts to contact by telephone every H&S associate in a particular industry practice in the United States, as well as several Consultants in the United States across industry practices.

41.     Upon information and belief, each individual contacted has been offered employment with Korn Ferry, accompanied with an offer of above-market or excessive compensation.

### C.     Breaches and Violations by Chad Astmann

42.     Pursuant to an employment agreement between Astmann and H&S, dated March 18, 2014, effective January 1, 2014, Astmann served as Partner, Sector Leader for Asset Management in the Financial Services practice of H&S (the "Astmann Agreement").

43.     Astmann agreed that he would not solicit current or prospective clients of H&S:

[F]or a period of six (6) months after the date of [his] employment with [H&S] ends, [Astmann] shall not . . . solicit, divert or attempt to obtain business from, accept business from, or do business with or aid or assist anyone else in the solicitation or acceptance of business from any current or prospective client of [H&S] for whom [he] provided services or solicited for engagement or assignments on behalf of [H&S] during the last twelve (12) months of [his] employment.

44.     Exhibit A to the Astmann Agreement is a Confidentiality Agreement, pursuant to which Astmann additionally agreed to protect H&S' Confidential Information "as a condition for initial and continuing employment" with H&S.  Confidential Information is defined to include:

---

[1] H&S employees poached by Korn Ferry include, but are not limited to, Marc Bartel (Paris), Brad Berke (Chicago), Matt Stencil (Chicago), Sally Beatty (Chicago), Jason Waterman (Minneapolis), Carolyn Vavrek (San Francisco), Scott Hensarling (Singapore), Gareth McIlroy (Singapore), Graham Poston (Singapore), and Aaron Justin Duncan Smyth (Australia).

[I]nformation which is not generally known to the public which is used in [H&S] business including, but not limited to, products or services; fees, costs and pricing structure; designs; analyses; drawings; photographs; reports; computer software, including operating systems, applications, and program listings, flow charts, manuals and documentation; confidential and proprietary databases or databases containing confidential and proprietary information; financial and accounting statements, projections, targets, budgets, and other related information; private information related to the employment, performance can compensation of fellow employees; business plans, strategies and methods; inventions and new developments and methods whether or not reduced to practice; H&S client lists; H&S clients and candidates and their information; supplier and vendor information; all copyrightable works; and all similar and related information in whatever form.

45.     The Confidentiality Agreement prohibits Astmann from:

[D]isclos[ing] or us[ing] for the benefit of any person, corporation or other entity . . . any and all files, trade secrets or other confidential information concerning the internal affairs of the [H&S] and its affiliates, including but not limited to information pertaining to its clients, services, products, earnings . . .

46.     Astmann likewise agreed that, upon termination of his employment from H&S, he would:  (i) "return and deliver to H&S all of the papers records, film, documents . . .  which [he] may have relating, in any way, to the business or clients of H&S, all of which is and shall be the exclusive property of H&S;" and (ii) "immediately delete, destroy, and/or disable any email, 'cloud' or other remote storage accounts which contain any electronic copies of and/or data reflecting any [H&S] Confidential Information . . . "

47.     Additionally, in accordance with paragraph 11(c) of the Astmann Agreement, for good and valuable consideration, Astmann agreed not to solicit any employee of H&S into a position where H&S Confidential Information is relevant.  In particular, the Astmann Agreement provides that:

[F]or the period of your employment by [H&S] and for six (6) months after the date of [Astmann's] employment with [H&S] ends for any reason, [Astmann] [] agree[s] not to directly or indirectly solicit or hire any employee of [H&S] [he] worked with during [his] employment at [H&S] or any individual who possesses Confidential Information about [H&S] into any position, engagement or assignment where such Confidential Information may be relevant.

- 10 -

48.   Astmann resigned from H&S on October 10, 2017 to join Korn Ferry as Co-Head, Global Asset Management practice at Korn Ferry's office in New York City.

49.   Astmann previously worked with Defendant Vyas at H&S in the same New York City office.  Vyas worked in H&S' financial services practice.

50.   Vyas left H&S effective January 18, 2018 and joined Korn Ferry's financial services practice as a senior client partner as of January 29, 2018, less than four (4) months after Astmann left H&S.

51.   Astmann, as an employee and agent of Korn Ferry, recruited Vyas to join Korn Ferry, less than six months after he left H&S in violation of the Astmann Agreement.

52.   In addition, upon information and belief, Astmann recently was engaged to perform an executive search for one of H&S' important clients in violation of the Astmann Agreement.

**D.   Breaches and Violations by Deepali Vyas**

53.   Pursuant to an employment agreement between Vyas and H&S, dated July 24, 2014, with an effective date of September 2, 2014, Vyas served as a Principal in Financial Services at H&S (the "Vyas Agreement").

54.   Vyas agreed that she would not solicit current or prospective clients of H&S:

For the period of [Vyas'] employment with [H&S] and for a period of twelve (12) months after the date [Vyas'] employment with [H&S] ends for any reason, [Vyas] shall not . . . solicit, divert or attempt to obtain business from, accept business from, or do business with – or aid or assist others in the same – with any Person for whom [she] provided services or solicited for the provision of services on behalf of [H&S] during the last twelve (12) months of [her] employment for the purpose of engaging in the same Business as [H&S].

55.   Exhibit A to the Vyas Agreement is a Confidentiality Agreement, pursuant to which Vyas agreed to protect H&S' Confidential Information "as a condition for initial and continuing employment" with H&S.  The Confidentiality Agreement reflects Vyas' agreement

- 11 -

not to accept any employment which would cause the disclosure of H&S Confidential

information for a period of six months following her departure from H&S:

> [A]s part of [Vyas'] duties and responsibilities to protect and not disclose the
> proprietary and Confidential Information of [H&S], for six months following the
> termination of [her] employment with [H&S], [she] shall not accept any
> employment, assignment, matter, client representation or engagement as an
> employee of or consultant to any company or entity (including self-employment)
> which would potentially benefit from and/or cause the likely disclosure of [H&S']
> proprietary information, Confidential Information or trade secrets.

56.    Vyas further agreed that she would not:

> disclose or use for the benefit of any person, corporation or other entity, or for
> [her]self any and all files, trade secrets or other confidential information
> concerning the internal affairs of [H&S] and its affiliates, including, but not
> limited to, information pertaining to its clients, services, products, earnings,
> finances, operations, methods or other activities . . .

57.    In accordance with paragraph 14 of the Vyas Agreement, Vyas agreed not to

solicit any employee of H&S into a position where H&S Confidential Information is relevant.  In

particular, the Vyas Agreement provides that:

> For the period of [Vyas'] employment by [H&S] and for twelve (12) months after
> the date of [Vyas'] employment with [H&S] ends for any reason, [she] agree[s]
> not to directly or indirectly solicit or hire any employee of [H&S] with whom
> [she] worked during [her] employment at [H&S], or any individual who possesses
> Confidential Information about [H&S] into any position, engagement or
> assignment where such Confidential Information may be relevant.

58.    Vyas additionally agreed that, upon termination of her employment from H&S,

she would:  (i) "return and deliver to H&S all of the papers records, film, documents . . . which

[she] may have relating, in any way, to the business or clients of H&S, all of which is and shall

be the exclusive property of H&S;" and (ii) "immediately delete, destroy, and/or disable any

email, 'cloud' or other remote storage accounts which contain any electronic copies of and/or

data reflecting any [H&S] Confidential Information . . . "

59.    Vyas submitted her resignation to H&S on January 16, 2018 and accepted

- 12 -

employment at Korn Ferry.  In a January 17, 2018 email to her manager at H&S, David Boehmer, Vyas stated that she would "absolutely be a good leaver to the firm."

60.    Vyas' employment with Korn Ferry necessarily will involve her use of H&S Confidential Information, which Vyas learned throughout her tenure at H&S.

61.    In fact, a search by H&S of Vyas' emails on January 17, 2018 revealed that, in violation of her employment agreement and H&S' information technology practices, Vyas misappropriated H&S Confidential Information by forwarding confidential H&S pitch materials relating to at least two current H&S clients to her personal email accounts during the prior month.  Upon information and belief, Vyas intends to use this material in connection with her role at Korn Ferry.

62.    H&S sent Vyas a letter on January 18, 2018 (the "January 18, 2018 Letter") reminding her of her ongoing post-termination obligations, including her non-solicitation, non-compete, and confidentiality obligations to H&S.

63.    On January 31, 2018, upon learning of Korn Ferry's press release announcing Vyas' start with Korn Ferry as a Senior Client Partner for Financial Services, H&S sent a second letter to Vyas (the "Vyas January 31, 2018 Letter")  requesting, *inter alia,* that Vyas:  (i) provide a written explanation for her decision to forward H&S pitch-related documents to her personal email account; (ii) return all H&S Confidential Information and property of H&S to H&S and delete all such information from any device containing such information; and (iii) provide written confirmation of the same by February 2, 2018.  H&S also requested that Vyas confirm her start date with Korn Ferry by February 2, 2018.

64.    As of the date of this filing, Vyas has not provided the written confirmation requested in the Vyas January 31, 2018 Letter.

65.     Upon information and belief, on January 31, 2018, Vyas sent an email from her Korn Ferry email address to at least one former client noting her departure from H&S, her move to Korn Ferry, and providing her new contact information.

**E.     Breaches and Violations by Daniel Kaplan**

66.     Pursuant to an employment agreement between Kaplan and H&S, dated February 20, 2015, accepted by Kaplan as of February 24, 2015 and effective March 1, 2015, Kaplan served as a Partner and Co-Head of the Chief Human Resource Officer ("CHRO") Practice at H&S (the "Kaplan Agreement").

67.     Exhibit A to the Kaplan Agreement is a Consultant Business Protection Agreement, which in accordance with paragraph 8 thereof, Kaplan agreed that he would not solicit current or prospective clients of H&S:

> [F]or the period of [Kaplan's] employment with [H&S] and for a period of twelve (12) months after the date [his] employment with [H&S] ends for any reason, [Kaplan] shall not . . . solicit, divert or attempt to obtain business from, accept business from, or do business with - or aid or assist others in the same – with any Person for whom [he] provided services or solicited for the provision of services on behalf of [H&S] during the last twelve (12) months of [his] employment for the purpose of engaging in the same Business as [H&S].

68.     Kaplan additionally agreed to protect H&S Confidential Information and was prohibited from:

> [D]irectly or indirectly, in whole or in part, disclos[ing], or transfer[ring] any files, documents, or other forms of trade secrets or Confidential Information concerning the affairs of H&S.

69.     Kaplan further agreed that he would not accept any employment which would cause the disclosure of H&S Confidential information for a period of six months following his departure from H&S:

> As part of [his] agreed-upon duties and responsibilities to protect the Heidrick Platform, the Confidential Information and strategic client and candidate relationships developed by H&S, its employees, by virtue of [his] employment

- 14 -

with [H&S], [he] agree[s] that for six months following the termination of [his] employment, [he] shall not accept any employment, assignment, matter, client representation or engagement as an employee of or consultant to any company or entity (including self-employment) which would cause the likely disclosure of H&S proprietary information, Confidential Information or trade secrets.

70.    Exhibit A to the Kaplan Agreement is a Consultant Business Protection Agreement, pursuant to which Kaplan agreed not to solicit any employee of H&S into a position where H&S Confidential Information is relevant:

[F]or the period of [Kaplan's] employment by [H&S] and for twelve (12) months after the date of [his] employment with [H&S] ends for any reason, [Kaplan] agree[s] not to directly or indirectly solicit or hire any employee of [H&S] with whom [he] worked during [his] employment at [H&S], or any individual who possesses Confidential Information about [H&S] into any position, engagement or assignment where such Confidential Information may be relevant.

71.    Kaplan likewise agreed that, upon termination of his employment from H&S, he would:  (i) "return and deliver to H&S all of the papers records, film, documents . . . which [he] may have relating, in any way, to the business or clients of H&S, all of which is and shall be the exclusive property of H&S;" and (ii) "immediately delete, destroy, and/or disable any email, 'cloud' or other remote storage accounts which contain any electronic copies of and/or data reflecting any [H&S] Confidential Information . . . "

72.    Kaplan resigned from H&S on January 23, 2018.

73.    Shortly prior to his resignation, Kaplan forwarded certain H&S Confidential Information directly related to H&S clients and open client engagements to his personal email account.

74.    On January 30, 2018, Korn Ferry announced that Kaplan had joined Korn Ferry as Managing Partner in their CHRO consulting and recruitment practice.  Kaplan's employment with H&S necessarily will involve Kaplan's use of H&S Confidential Information, which Kaplan learned throughout his tenure at H&S.

- 15 -

75.     By letter to Kaplan, dated January 31, 2018 (the "Kaplan January 31 Letter"), H&S informed Kaplan, *inter alia*, that H&S had learned that Kaplan had been forwarding H&S Confidential Information directly related to H&S clients and open client engagements to his personal email account, and that such actions were in violation of his employment agreement and H&S policy.  In the Kaplan January 31 Letter, H&S also requested, *inter alia,* that Kaplan: (i) provide a written explanation for his decision to forward H&S Confidential Information outside of H&S' systems; (ii) return all H&S Confidential Information and property of H&S to H&S and delete all such information from any device containing such information; and (iii) provide written confirmation of the same by February 2, 2018.

76.     As of the date of this filing, Kaplan has not provided the written confirmation requested in the Kaplan January 31, 2018 Letter.

77.     In addition, subsequent to the sending the Kaplan January 31 Letter, H&S has been made aware that Kaplan has contacted at least two current H&S clients in an effort to solicit their business in violation of his agreement with H&S.  In addition, upon information and belief, Kaplan has attempted to poach at least two H&S employees in the CHRO practice to join him at Korn Ferry, as well as his Executive Assistant.

78.     As of the date of this filing, Kaplan also has failed to reimburse H&S approximately $4,000, which represents the portion of his Sign-On Bonus that must be returned to H&S as a result of the fact that Kaplan did not complete three years of service with H&S.

**F.     Breaches and Violations by Lorraine Hack**

79.     Pursuant to an employment agreement between Hack and H&S dated October 3, 2006, accepted by Hack as of October 5, 2006, and effective October 16, 2006, Hack served as a Partner in the Chief Financial Officer ("CFO") Practice at H&S (the "Hack Agreement").

80.     In accordance with paragraph 10 of the Hack Agreement, Hack agreed not to

- 16 -

become an employee of an H&S competitor, and not to solicit any employee of H&S to terminate his or her employment with H&S:

> During the term of [Hack's] employment by [H&S] and for a period of six months after the termination of [her] employment with [H&S] [she] shall not (i) become an employee of or consultant to any principal competitor of [H&S] in substantially the same function as [her] employment with [H&S] or its affiliates or (ii) directly or indirectly solicit or hire, or assist any other person in soliciting or hiring, any employee of [H&S] (as of [her] termination with [H&S]) or any person who, as of such date, was in the process of being recruited by [H&S] or its affiliates, or induce any such employee to terminate his or her employment with [H&S] or its affiliates.

81.    Pursuant to paragraph 9 of the Hack Agreement, Hack additionally agreed to protect H&S' Confidential Information:

> [Hack] will not, directly or indirectly . . . disclose or use for the benefit of any person, corporation or other entity, or for [herself] any and all files, trade secrets or other confidential information concerning the internal affairs of [H&S] and its affiliates, including, but not limited to, information pertaining to its clients, services, products, earnings, finances, operations, methods or other activities; provided, however, that the foregoing shall not apply to information which is of public record or is generally known, disclosed or available to the general public or the industry generally (other than as a result of [her] breach of this covenant).

82.    Hack additionally agreed not to:

> [D]irectly or indirectly, remove or retain, and upon termination of employment for any reason [she] shall return to [H&S] any records, computer disks, computer printouts, business plans or any copies of reproductions thereof, or any information or instruments derived there from, arising out of or relating to the business of [H&S] and its affiliates or obtained as a result of [her] employment by [H&S].

83.    Pursuant to Paragraph 11 of the Hack Agreement, the parties agreed that any claim arising out or related to the agreement or from breach of the agreement shall be conclusively settled by arbitration in accordance with the American Arbitration Association's ("AAA") Employment Dispute Resolution Rules.

84.    The Hack Agreement does not include the parties' express agreement to adopt the AAA's Optional Rules for Emergency Measures of Protection or otherwise expressly provide for

issuance of expedited orders seeking equitable relief in the form of an injunction.[2]

85.     Hack resigned from H&S on February 7, 2018.

86.     Prior to her resignation, Hack was involved with several on-going search projects for significant, current clients of H&S.  In violation of the Hack Employment Agreement, within one week following her resignation, Hack contacted a current H&S client to inform the client that "she was committed to seeing the search [she had commenced with H&S] through to the end."

87.     Subsequent to her resignation, H&S has learned that Hack intends to join Korn Ferry.  Hack's employment with H&S necessarily will involve Hack's use of H&S Confidential Information, which Hack learned throughout her tenure at H&S.

88.     By letter, dated February 12, 2018 (the "Hack February 12 Letter"), H&S reminded Hack of her post-termination obligations in the Hack Agreement and requested, *inter alia,* that Hack cease and desist from violating her post-termination obligations.  H&S further requested that Hack:  provide written assurance by no later than February 13, 2018 that she:  (i) was not presently employed by Korn Ferry; (ii) that she had not provided any H&S Confidential Information to Korn Ferry; and (iii) that she identify the steps she had taken or would take to ensure the protection of H&S' legal rights.

89.     By letter from her counsel dated February 14, 2018, Hack informed H&S, among other things, that she intends to work for Korn Ferry because the restrictive covenants in her employment agreement allegedly are unenforceable.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against Defendant Astmann)

---

[2] H&S intends simultaneously to commence a proceeding against Hack in accordance with the AAA's Employment Dispute Resolution Rules as provide in Paragraph 11 of the Hack Agreement.  H&S proceeds with this action against Hack only for purposes of obtaining temporary and preliminary injunctive relief, which is not otherwise currently available in arbitration.

- 18 -

90.     H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

91.     Pursuant to the Astmann Agreement and the Confidentiality Agreement incorporated by reference and annexed as Exhibit A thereto, for a period of six months after the termination of his employment at H&S, Astmann agreed to prohibitions on, directly or indirectly:  (i) soliciting or hiring any employee of H&S who he worked with while employed at H&S or who possesses Confidential Information about H&S into any position in which such Confidential Information may be relevant; and (ii) soliciting, diverting or attempting to obtain business from any current or prospective client of H&S.

92.     Astmann further agreed to prohibitions on disclosing or using H&S Confidential Information following the term of his employment and to return all H&S property and Confidential Information to H&S.  He likewise is contractually obligated to, among other things: (i) return and deliver to H&S all papers and documents he may have relating, in any way, to the business or clients of H&S; and (ii) delete, destroy, and/or disable any email, 'cloud' or other remote storage accounts which contain any electronic copies of and/or data reflecting any H&S Confidential Information.

93.     Astmann has breached the Astmann Agreement and the Confidentiality Agreement annexed thereto by, among other things:  (i) soliciting employees of H&S to join Korn Ferry; (ii) upon information and belief, soliciting, diverting or attempting to obtain business from clients, customers and/or candidates of H&S; and (iii) upon information and belief, disclosing H&S Confidential Information to Korn Ferry and/or using H&S Confidential Information for Korn Ferry's benefit.

94.     As a result of Astmann's breaches of his employment agreement with H&S, H&S

- 19 -

has suffered irreparable harm, including, but not limited to, misappropriation of its Confidential Information, loss of employees, clients, business opportunities, and harm to its reputation and goodwill.

95.    As a result of Astmann's breaches, H&S seeks, among other remedies, injunctive relief and damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of Contract Against Defendant Vyas)

96.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

97.    Pursuant to the Vyas Agreement and the Confidentiality Agreement incorporated by reference and annexed as Exhibit A thereto, for a period of twelve months after the termination of her employment at H&S, Vyas agreed to prohibitions on, directly or indirectly: (i) soliciting or hiring any employee of H&S who she worked with during her employment with H&S or any individual who possesses Confidential Information about H&S into any position in which such Confidential Information may be relevant; and (ii) soliciting, diverting or attempting to obtain business from any current or prospective client of H&S.

98.    Vyas also agreed that for six months following the termination of her employment with H&S, she would not accept any employment, assignment, matter, client representation or engagement as an employee of or consultant to any company or entity (including self-employment) which would potentially benefit from and/or cause the likely disclosure of H&S proprietary information, Confidential Information or trade secrets.

99.    Vyas further agreed to prohibitions on disclosing or using H&S Confidential Information following the term of her employment and to return all H&S property and Confidential Information to H&S.  She likewise is contractually obligated to, among other

- 20 -

things:  (i) return and deliver to H&S all papers and documents she may have relating, in any way, to the business or clients of H&S; and (ii) delete, destroy, and/or disable any email, 'cloud' or other remote storage accounts which contain any electronic copies of and/or data reflecting any H&S Confidential Information.

100.    Vyas has breached the Vyas Agreement and the Confidentiality Agreement incorporated by reference and annexed as Exhibit A thereto by, among other things:  (i) working as an employee of Korn Ferry within six months after her employment with H&S; (ii) upon information and belief, soliciting clients, customers, and/or candidates of H&S ; (iii) forwarding H&S Confidential information to her personal email account; (iv) failing to certify the deletion of H&S Confidential Information that she had improperly diverted to her personal email account; and (v) disclosing H&S Confidential Information to Korn Ferry and/or using H&S Confidential Information for Korn Ferry's benefit.

101.    As a result of Vyas' breaches of her employment agreement with H&S, H&S has suffered irreparable harm, including, but not limited to, misappropriation of its Confidential Information, loss of employees, clients, business opportunities, and harm to its reputation and goodwill.

102.    As a result of Vyas' breaches, H&S seeks, among other remedies, injunctive relief and damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Breach of Contract Against Defendant Kaplan)**

103.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

104.    Pursuant to the Kaplan Agreement and the Consultant Business Protection Agreement incorporated by reference and annexed as Exhibit A thereto, for a period of twelve

months after the termination of his employment at H&S, Kaplan agreed to prohibitions on, directly or indirectly: (i) soliciting or hiring any employee of H&S who he worked with during his employment with H&S or any individual who possesses Confidential Information about H&S into any position in which such Confidential Information may be relevant; and (ii) soliciting, diverting or attempting to obtain business from any current or prospective client of H&S.

105.    Kaplan also agreed that for six months following the termination of his employment with H&S, he would not accept any employment, assignment, matter, client representation or engagement as an employee of or consultant to any company or entity (including self-employment) which would cause the likely disclosure of H&S proprietary information, Confidential Information or trade secrets.

106.    Kaplan further agreed to prohibitions on disclosing or using H&S Confidential Information following the term of his employment and to return all H&S property and Confidential Information to H&S. He likewise is contractually obligated to, among other things: (i) return and deliver to H&S all papers, and documents which he may have relating, in any way, to the business or clients of H&S; and (ii) delete, destroy, and/or disable any email, 'cloud' or other remote storage accounts which contain any electronic copies of and/or data reflecting any H&S Confidential Information.

107.    Since resigning from H&S, Kaplan has breached the Kaplan Agreement and the Consultant Business Protection Agreement annexed as Exhibit A thereto by, among other things: (i) working as an employee of Korn Ferry within six months after his employment with H&S; (ii) upon information and belief, soliciting employees of H&S to join Korn Ferry; (iii) upon information and belief, soliciting clients, customers, and/or candidates of H&S; (iv) forwarding H&S Confidential information to his personal email account; (v) failing to certify the deletion of

- 22 -

H&S Confidential Information that he had improperly diverted to his personal email account; (vi) failing to return H&S property including Confidential Information to H&S; (vii) disclosing H&S Confidential Information to Korn Ferry and/or using H&S Confidential Information for Korn Ferry's benefit; and (viii) failing to reimburse H&S a pro-rated portion of his Sign-On Bonus, totaling approximately $4,000.

108.    As a result of Kaplan's breaches of his employment agreement with H&S, H&S has suffered irreparable harm, including, but not limited to, misappropriation of its Confidential Information, loss of employees, clients, business opportunities, and harm to its reputation and goodwill.

109.    As a result of Kaplan's breaches, H&S seeks, among other remedies, injunctive relief and damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**(Breach of Contract Against Defendant Hack)**

110.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

111.    Pursuant to the Hack Agreement, for a period of six months after the termination of her employment at H&S, Hack agreed to prohibitions on directly or indirectly soliciting or hiring any employee of H&S, or inducing any such employee to terminate his or her employment with H&S.

112.    Hack also agreed that for six months following the termination of her employment with H&S, she would not become an employee of or consultant to any principal competitor of H&S.

113.    Hack further agreed to prohibitions on disclosing or using H&S Confidential Information for the benefit of any person, corporation or entity following the term of her

- 23 -

employment. Following the term of her employment, she is further obligated to return to H&S any records or other documents relating to the business of H&S.

114.    Hack has breached the Hack Agreement by, among other things: (i) working as an employee of Korn Ferry within six months after her employment with H&S; (ii) soliciting clients, customers, and/or prospective clients of H&S; and (iii) upon information and belief, disclosing H&S Confidential Information to Korn Ferry and/or using H&S Confidential Information for Korn Ferry's benefit.

115.    As a result of Hack's breaches of her employment agreement with H&S, H&S has suffered irreparable harm, including, but not limited to, misappropriation of its Confidential Information, loss of employees, clients, business opportunities, and harm to its reputation and goodwill.

116.    As a result of Hack's breaches, H&S seeks temporary and preliminary injunctive relief.

**FIFTH CAUSE OF ACTION**
**(Trade Secret Misappropriation Under**
**18 U.S.C. §§ 1836 *et seq.* against Korn Ferry, Astmann, Vyas and Kaplan)**

117.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

118.    H&S developed, is the owner of, and was, at all relevant times, in possession of the H&S Confidential Information. The H&S Confidential Information is information used in its business that is not generally known to the public, including, among other things: product and services fees, costs and pricing structures; designs; analyses; drawings; photographs; reports; computer software; flow charts, manuals and documentation; confidential and proprietary databases; financial and accounting statements; projections, targets, budgets and related information; financial and accounting statements; private information relating to employment,

- 24 -

Case 1:18-cv-01503-PAE    Document 1-1    Filed 02/20/18    Page 27 of 42

performance and compensation; business plans, strategies and methods; client lists; candidate information; sales pitch information; supplier and vendor information; and other similar and related information in various forms.

119.    H&S' use of the H&S Confidential Information relates to products and services used in, or intended for use in, interstate or foreign commerce.

120.    H&S' Confidential Information is proprietary to H&S, is not generally known to another person who can obtain economic value from its disclosure or use, and H&S derives independent economic value from the fact that it are not so known because it enable H&S to maintain a leadership position in its industry.

121.    H&S has made and continues to make efforts that are reasonable under the circumstances to secure the secrecy of the H&S Confidential Information by, among other things, having a practice of restricting access to it to only those persons who need it and requiring persons who access it, such as Astmann, Vyas, Kaplan, and Hack, to execute non-disclosure agreements such as the Astmann Agreement, Vyas Agreement, Kaplan Agreement and Hack Agreement discussed above.

122.    Upon information and belief, Korn Ferry, Astmann, Vyas and Kaplan have misappropriated, and continue to misappropriate, the H&S Confidential Information by disclosing and using it to solicit H&S' clients, candidates, and customers throughout the United States, including in New York, while knowing or having reason to know that the H&S Confidential Information was acquired through improper means, under circumstances giving rise to a duty to maintain its secrecy or limit its use, and/or from persons, such as Astmann, Vyas and Kaplan, who owed a duty to H&S (both contractually and under common law) to maintain its secrecy and limit its use.

- 25 -

123.    Upon information and belief, Korn Ferry misappropriated and acquired certain H&S Confidential Information through improper means, including: (a) inducing Vyas and Kaplan to obtain and disclose the H&S Confidential Information in violation of the non-competition, non-solicitation and non-disclosure provisions in their respective Agreements; (b) receiving and using certain H&S Confidential Information for Defendants' benefit, while knowing, or having reason to know, that it had been acquired by unlawful or improper means; and (c) receiving and using certain H&S Confidential Information for Defendants' benefit while knowing, or having reason to know, that it was acquired under circumstances giving rise to a duty to maintain the secrecy of the H&S Confidential Information or limit the use of the H&S Confidential Information.

124.    Upon information and belief, Korn Ferry, Astmann, Vyas and Kaplan intentionally misappropriated the H&S Confidential Information and used, and continue to use, it to solicit H&S' clients, customers, and candidates away from H&S and to Korn Ferry.

125.    Unless injunctive relief is entered, H&S will suffer immediate and irreparable harm in the form of lost business relationships, which took time and money to cultivate, the loss of goodwill and business reputation, the misappropriation and use of the H&S Confidential Information and other recognized injuries.

126.    H&S has no adequate remedy at law for its present and threatened injuries.

127.    As a result of Korn Ferry's, Astmann's, Vyas' and Kaplan's wrongful conduct, H&S seeks, among other remedies, injunctive relief and compensatory and statutory damages in an amount to be determined at trial.

128.    Defendants' misappropriation of the H&S Confidential Information was willful and malicious.  As such, H&S is entitled under 18 U.S.C. § 1836 to an award of exemplary

- 26 -

damages against Korn Ferry, Astmann, Vyas and Kaplan equal to twice its actual damages caused by the misappropriation, as well as all reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (Misappropriation of Confidential and Proprietary Information and Trade Secrets Against All Defendants)

129.     H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

130.     H&S spent significant time, effort and resources to create and maintain the H&S Confidential Information.  This information was developed through years of painstaking research, development, expense, and cultivation of customer, client, and candidate relationships that give H&S a competitive edge.

131.     H&S took significant precautionary measures to secure and preserve the H&S Confidential Information, by, among other things, restricting access to it and disclosing it to only those persons who need and require it to perform their duties for H&S and requiring persons who access them, such as the Former H&S Employees, to execute non-disclosure agreements such as those at issue.

132.     By virtue of their positions within H&S, the Former H&S Employees had access to the H&S Confidential Information.

133.     During and after their employment with H&S, the Former H&S Employees, both individually and, upon information and belief, on behalf of Korn Ferry, acted in bad faith and misappropriated a commercial advantage belonging to H&S by using and exploiting the H&S Confidential Information.

134.     Defendants intentionally misappropriated the H&S Confidential Information and are or may use it to continue to solicit H&S' clients, customers and/or candidates from H&S to

- 27 -

Korn Ferry at H&S' expense.

135.    Unless injunctive relief is entered, H&S will suffer irreparable harm, including, but not limited to, misappropriation of its Confidential Information, loss of employees, clients, business opportunities, and harm to its reputation and goodwill.

136.    H&S has no adequate remedy at law for its present and threatened injuries.

137.    As a result of Defendants' wrongful conduct, H&S seeks:  (i) temporary and preliminary relief against Hack; and (ii) among other remedies, injunctive relief and damages against Korn Ferry, Astmann, Vyas and Kaplan in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
**(Tortious Interference with Contractual Relations Against Korn Ferry and Astmann)**

138.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

139.    Upon information and belief, Korn Ferry possessed knowledge and information concerning the post-employment restrictions set forth in the Astmann Agreement, Vyas Agreement, Kaplan Agreement and Hack Agreement when it hired Astmann, Vyas, Kaplan and Hack.

140.    Astmann possessed knowledge and information concerning the post-employment restrictions set forth in the Vyas Agreement when Astmann solicited Vyas to resign from H&S, encouraged Vyas to accept a position with Korn Ferry and when Korn Ferry hired Vyas.

141.    Korn Ferry intentionally and improperly prevented Astmann, Vyas, Kaplan, and Hack from rendering full performance of their obligations under their respective employment agreements by aiding and encouraging Astmann, Vyas, Kaplan, and Hack to breach those agreements as further set forth above.

142.    Similarly, Astmann intentionally and improperly prevented Vyas from rendering

- 28 -

full performance of the Vyas Agreement by aiding and encouraging Vyas to breach that agreement as further set forth above.

143.    This wrongful conduct was undertaken with the sole intent of interfering with the Astmann Agreement, Vyas Agreement, Kaplan Agreement, and Hack Agreement, or rendering performance under those agreements impossible.

144.    Unless injunctive relief is entered, H&S will suffer irreparable harm, including loss of employees, clients, business opportunities, and harm to its reputation and goodwill.

145.    H&S has no adequate remedy at law for its present and threatened injuries.

146.    As a result of Korn Ferry and Astmann's wrongful conduct, H&S seeks, among other remedies, injunctive relief and damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Breach of Duty of Loyalty Against Astmann, Vyas, Kaplan, and Hack)

147.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

148.    As employees of H&S, Astmann, Vyas, Kaplan, and Hack each owed common law duties of loyalty to H&S as agents acting for H&S, as principal, in all matters affecting the subject of their agency, and were required to act in utmost good faith in the furtherance and advancement of H&S' interests, including maintaining the confidentiality of the H&S Confidential Information, which H&S entrusted to Astmann, Vyas, Kaplan and Hack.

149.    The aforesaid obligations continue after Astmann, Vyas, Kaplan and Hack terminated their employment with H&S.

150.    By virtue of the acts of Astmann, Vyas, Kaplan and Hack described above, Astmann, Vyas, Kaplan and Hack each failed to act in the best interest of H&S and breached their duty of loyalty to H&S, including by:

- 29 -

a. As to Astmann, recruiting Vyas and inducing her to resign from H&S and work for Korn Ferry;

b. Failing to advise H&S of their intent to compete with H&S prior to ending their employment;

c. Misappropriating and wrongfully retaining H&S Confidential Information;

d. Disclosing and/or using H&S Confidential Information;

e. Accepting employment with a direct competitor of H&S; and

f. Otherwise acting against the interests of H&S.

151.    On information and belief, Astmann, Vyas, Kaplan, and Hack have breached or intend to breach such common law duties by using H&S Confidential Information for their own benefit and for the benefit of their new employer, Korn Ferry.

152.    H&S has suffered and will continue to suffer irreparable injury in addition to monetary damages as a direct and proximate result of the conduct of Astmann, Vyas, Kaplan, and Hack which cannot be reasonably ascertained.

153.    The actions of Astmann, Vyas, Kaplan and Hack are intentional, willful, wanton and/or reckless and are calculated to harm H&S.

154.    The breaches of the duty of loyalty by Astmann, Vyas, Kaplan, and Hack are material.

155.    Unless restrained by this Court, Astmann, Vyas, Kaplan, and Hack will continue their unlawful actions and H&S will continue to be irreparably harmed.

156.    H&S has no adequate remedy at law for its present and threatened injuries.

157.    As a result of Astmann's, Vyas', Kaplan's and Hack's wrongful conduct, H&S seeks: (i) temporary and preliminary relief against Hack; and (ii) among other remedies,

- 30 -

injunctive relief and damages against Astmann, Vyas and Kaplan in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Aiding and Abetting Breach of Duty of Loyalty Against Korn Ferry and Astmann)

158.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

159.    Astmann was aware of, aided and abetted, and substantially assisted the breaches of the duty of loyalty by Vyas described above.

160.    Upon information and belief, Korn Ferry was aware of, aided and abetted, and substantially assisted the breaches of the duty of loyalty by Astmann, Vyas, Kaplan, and Hack described above.

161.    As a direct and proximate result of Astmann's aiding and abetting Vyas' breaches of her duty of loyalty, and Korn Ferry's aiding and abetting Astmann's, Vyas', Kaplan's and Hack's breaches of their duties of loyalty, H&S has suffered substantial monetary damages.

162.    H&S has no adequate remedy at law.

163.    As a result of Korn Ferry and Astmann's wrongful conduct, H&S seeks, among other remedies, injunctive relief and damages against Korn Ferry and Astmann in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* against Vyas and Kaplan )

164.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

165.    The H&S computers and laptops issued to Vyas and Kaplan (the "Computers")

- 31 -

were utilized in interstate commerce and are protected computers under 18 U.S.C. § 1030(e)(2).

166.    As set forth above, Vyas forwarded confidential H&S Confidential Information, including pitch materials relating to at least two current H&S clients from a Computer to her personal email accounts.  In doing so, Vyas exceeded authorized access to the Computers and obtained information of value therefrom.

167.    As set forth above, Kaplan forwarded certain H&S Confidential Information directly related to H&S clients and open client engagements from a Computer to his personal email account.  In doing so, Kaplan exceeded authorized access to the Computer and obtained information of value therefrom.

168.    Upon information and belief, Vyas and Kaplan knowingly and intentionally and with intent to defraud, exceeded authorized access to the Computers and obtained information of value therefrom in furtherance of their intent to defraud, as set forth above, in violation of 18 U.S.C. § 1030(a)(2)(c); 18 U.S.C. § (a)(4); 18 U.S.C. § (a)(5)(B); 18 U.S.C. § (a)(5)(C) and/or 18 U.S.C. § (c)(4)(A)(I).

169.    H&S has been damaged by reason of the foregoing violations in excess of $5,000.00.

170.    Vyas' and Kaplan's unlawful access to the Computers has caused H&S irreparable injury.

171.    H&S is entitled to compensatory damages pursuant to 18 U.S.C. § 1030 (g).

## ELEVENTH CAUSE OF ACTION
### (Violation of the Stored Wire and Electronic Communication and Transactional Records Access Act, 18 U.S.C. § 2701 *et seq.* by Vyas and Kaplan)

172.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

- 32 -

173.    Title 18, United States Code, Section 2701 provides that intentionally accessing without authorization a facility through which an electronic communication service is provided; or intentionally exceeding an authorization to access that facility and obtaining, altering or preventing access to a wire or electronic communication while it is in electronic storage in such system is unlawful and shall be punished by a fine or imprisonment or both.

174.    The actions of Vyas and Kaplan, including but not limited to sending H&S Confidential Information to their personal email accounts constitute violations of the foregoing statute.

175.    On account of Vyas' and Kaplan's actions as alleged in this Complaint, Plaintiff has sustained losses and damages, including but not limited to lost clients, lost revenues, the cost of responding to Vyas' and Kaplan's offenses and conducting damage assessment, and Vyas and Kaplan are each liable, jointly and severally to Plaintiffs for such damages pursuant to 18 U.S.C. § 2700 et seq.

176.    As Vyas' and Kaplan's actions were willful or intentional, therefore H&S is entitled to punitive damages, the costs of the action, together with reasonable attorney fees determined by the court against Vyas and Kaplan jointly and severally.

### TWELFTH CAUSE OF ACTION
**(Inevitable Disclosure Against Astmann, Vyas, Kaplan, and Hack)**

177.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

178.    Astmann, Vyas, Kaplan and Hack each were granted access to the H&S Confidential Information, which was developed either independently of Astmann, Vyas, Kaplan and Hack or during the course of their employment with H&S. Astmann, Vyas, Kaplan and Hack each agreed not to disclose or use the H&S Confidential Information except to advance the

- 33 -

interests of H&S.

179.    By virtue of their aforementioned conduct, Astmann, Vyas, Kaplan and Hack either already have or inevitably will breach the confidentiality provisions of their respective agreements concerning H&S Confidential Information by disclosing it to Korn Ferry and/or or using H&S' Confidential Information for Korn Ferry's benefit.

180.    H&S has suffered and will continue to suffer irreparable injury in addition to monetary damages as a direct and proximate result of the conduct of Astmann, Vyas, Kaplan, and Hack which cannot be reasonably ascertained.

181.    H&S has no adequate remedy at law for its present and threatened injuries.

182.    As a result of Astmann's, Vyas', Kaplan's and Hack's wrongful conduct, H&S seeks: (i) temporary and preliminary relief against Hack; and (ii) among other remedies, injunctive relief and damages against Astmann, Vyas and Kaplan in an amount to be determined at trial.

### THIRTEENTH CAUSE OF ACTION
**(Conversion Against Vyas and Kaplan)**

183.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

184.    H&S is the owner of the H&S Confidential Information.

185.    Vyas misappropriated certain of the H&S Confidential Information without the consent of H&S, and has not returned the same to H&S, despite due demand.

186.    Kaplan misappropriated certain of the H&S Confidential Information without the consent of H&S, and has not returned the same to H&S, despite due demand.

187.    By these acts, Vyas and Kaplan have wrongfully asserted dominion over H&S' physical and intellectual property, including H&S Confidential Information.

- 34 -

Case 1:18-cv-01503-PAE    Document 1-1    Filed 02/20/18    Page 37 of 42

188.    As a direct and proximate result, H&S has suffered damages in an amount to be determined at trial.

189.    Vyas' and Kaplan's willful and intentional acts entitle H&S to punitive or exemplary damages under applicable law.

### FOURTEENTH CAUSE OF ACTION
**(Permanent Injunction Against Korn Ferry, Astmann, Vyas and Kaplan)**

190.    H&S repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

191.    Since resigning from H&S, Astmann, Vyas, and Kaplan have violated, are actively violating or are planning to violate their respective employment agreements by: (1) becoming employed by H&S' competitor, Korn Ferry, upon their termination from H&S; (2) directly or indirectly soliciting or encouraging H&S' customers to cease doing business with H&S; (3) directly or indirectly soliciting H&S' employees to resign and work for Korn Ferry; and/or (4) disclosing H&S Confidential Information to Korn Ferry and/or or using H&S' Confidential Information for Korn Ferry's benefit.

192.    Upon information and belief, Korn Ferry hired Astmann, Vyas, Kaplan, and Hack despite being apprised of their employment agreements, including the non-compete, non-solicitation and non-disclosure obligations contained therein.

193.    Upon information and belief, Korn Ferry, Astmann, Vyas and Kaplan have engaged or will engage in an organized and systematic effort to solicit H&S' clients, customers, and candidates, and to actively exploit client, customer, and candidate relationships Astmann, Vyas, Kaplan, and Hack developed while working at H&S.

194.    Upon information and belief, Korn Ferry, Astmann, Vyas and Kaplan have engaged or will engage in an organized and systematic effort to solicit H&S' employees who

- 35 -

possess H&S Confidential Information to resign from H&S and work for Korn Ferry in a manner in which such H&S Confidential Information is material and relevant.

195.    Upon information and belief, Astmann, Vyas, Kaplan, and Hack disclosed or will inevitably disclose and Defendants have used or will inevitably use the H&S Confidential Information in order to compete with H&S in the marketplace.

196.    Unless injunctive relief is entered, H&S will suffer irreparable harm including, but not limited to, misappropriation of its Confidential Information, loss of employees, clients, business opportunities, and harm to its reputation and goodwill.

197.    H&S has no adequate remedy at law for its present and threatened injuries.

198.    Accordingly, H&S is entitled to permanent injunctive relief enjoining and restraining Korn Ferry from: (i) employing Vyas before July 16, 2018; (ii) employing Kaplan before July 23, 2018; (iii) employing Hack before August 7, 2018; and (iv) using and/or disclosing any H&S Confidential Information.

199.    H&S is entitled to permanent injunctive relief enjoining and restraining Astmann from:  (i) directly or indirectly using and/or disclosing any H&S Confidential Information to any third-party, including Korn Ferry; and (ii) directly or indirectly soliciting H&S' clients, customers, candidates or employees for a business that competes with H&S before April 10, 2018.

200.    H&S is entitled to permanent injunctive relief enjoining and restraining Vyas from:  (i) accepting or continuing to remain employed by Korn Ferry or any other company or entity which would potentially benefit from and/or cause the likely disclosure of H&S Confidential Information prior to July 16, 2018; (ii) directly or indirectly using and/or disclosing any H&S Confidential Information to any third-party, including Korn Ferry; and (iii) directly or

- 36 -

indirectly soliciting H&S' clients, customers, candidates or employees for a business that competes with H&S before January 16, 2019.

201.    H&S is entitled to permanent injunctive relief enjoining and restraining Kaplan from: (i) accepting or continuing to remain employed by Korn Ferry or any other company or entity which would potentially benefit from and/or cause the likely disclosure of H&S Confidential Information prior to July 23, 2018; (ii) directly or indirectly using and/or disclosing any H&S Confidential Information to any third-party, including Korn Ferry; and (iii) directly or indirectly soliciting H&S' clients, customers, candidates or employees for a business that competes with H&S before January 23, 2019.

202.    H&S is also entitled to an Order directing Astmann, Vyas and Kaplan to return to H&S all H&S property and copies of any documents within their possession, custody or control which contain H&S Confidential Information.

203.    No prior application for the relief requested herein has been made to this or any other court.

## PRAYER FOR RELIEF

WHEREFORE, H&S demands the following relief:

a.    That judgment be entered in favor of H&S and against Korn Ferry, Astmann, Vyas and Kaplan on the claims as set forth above in an amount to be determined at trial, as well as interest, costs, and attorney's fees, plus punitive damages sufficient to punish Korn Ferry, Astmann, Vyas and Kaplan and to deter them and others from such conduct in the future;

b.    An Order requiring specific performance of the Astmann Agreement and Confidentiality Agreement, Vyas Agreement and Confidentiality Agreement, and Kaplan Agreement and Consultant Business Protection Agreement, and/or temporarily restraining and

preliminarily and permanently enjoining Astmann, Vyas and Kaplan, their partners, officers, directors, principals, agents, servants, employees, successors and assigns, and all other persons in active concert, privity or in participation with Astmann, Vyas and/or Kaplan, jointly and severally, from removing, altering, erasing, deleting, or destroying any documents or records or items in their possession, custody, or control, which were created by H&S, or by Astmann, Vyas and Kaplan during their employment with H&S, and requiring them to return all such documents or records to H&S immediately;

c.     An Order temporarily, preliminarily and permanently enjoining and restraining Defendant Astmann and his employers, agents, affiliates, and all those acting in concert with him or on his behalf or by his direction from directly or indirectly: (i) soliciting H&S clients or employees for a period of six months following his resignation from H&S; and (ii) using and/or disclosing H&S' Confidential Information;

d.     An Order temporarily, preliminarily and permanently enjoining and restraining Defendant Vyas and her employers, agents, affiliates, and all those acting in concert with her or on her behalf or by her direction from directly or indirectly from: (i) accepting any employment within the United States which would potentially benefit from and/or cause the likely disclosure of H&S' proprietary information, confidential information or trade secrets for a period of six months following her resignation from H&S; (ii) soliciting H&S clients or employees for a period of twelve months following her resignation from H&S; and (iii) using and/or disclosing H&S' Confidential Information;

e.     An Order temporarily, preliminarily and permanently enjoining and restraining Defendant Kaplan and his employers, agents, affiliates, and all those acting in concert with him or on him behalf or by his direction from directly or indirectly from: (i) accepting any

- 38 -

employment within the United States which would potentially benefit from and/or cause the likely disclosure of H&S' proprietary information, confidential information or trade secrets for a period of six months following his resignation from H&S; (ii) soliciting H&S clients or employees for a period of twelve months following his resignation from H&S; and (iii) using and/or disclosing H&S' Confidential Information;

   f.  An Order temporarily and preliminarily enjoining and restraining Hack and her employers, agents, affiliates, and all those acting in concert with her or on her behalf or by her direction from directly or indirectly from: (i) accepting any employment within the United States which would potentially benefit from and/or cause the likely disclosure of H&S' proprietary information, confidential information or trade secrets for a period six months following her resignation from H&S; (ii) soliciting H&S clients or employees for a period of six months following her resignation from H&S; or (iii) using and/or disclosing H&S' Confidential Information; and

   g.  Such other relief as the Court deems just, proper, and equitable.

Dated: February 15, 2018

Respectfully submitted,

REED SMITH LLP


/s/ Steven Cooper
Steven Cooper
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521 5400
Facsimile: (212) 521 5450
scooper@reedsmith.com

Peter M. Ellis (*pro hac* application to be filed)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

Melissa Rubenstein
REED SMITH LLP
136 Main Street, Suite 250
Princeton Forrestal Village
Princeton, NJ 08540
Telephone: (609) 987-0050
Facsimile: (609) 951-0842


Counsel for Plaintiff
Heidrick & Struggles International, Inc.